**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EXAMWORKS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| QUALITY MEDICAL EVALUATORS, | ) |
| LTD., FIRST MEDICAL EXPERTS, INC., | ) |
| NATIONAL DISABILITY EVALUATIONS | ) **PUBLIC VERSION** |
| INC., and RICHARD E. ALBERT, | ) |
| individually and as trustee of the ALBERT | ) |
| TRUST, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff ExamWorks, LLC ("ExamWorks" or "Plaintiff"), by and through its undersigned counsel, brings this action for common law fraud, breach of contract, and declaratory judgment under 28 U.S.C. §§ 2201, 2202 against Defendants Quality Medical Evaluators, Ltd., First Medical Experts, Inc., National Disability Evaluations Inc. (together, the "Sellers"), and Richard E. Albert, individually and as trustee of the Albert Trust (together with the Sellers, "Defendants"). ExamWorks alleges as follows:

## PARTIES

1. Plaintiff ExamWorks is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business at 3280 Peachtree Road NE, Suite 2625, Atlanta, GA 30305. Its sole member is ExamWorks Group, LLC, a limited liability company organized and existing under the laws of the State of Delaware. ExamWorks Group, LLC's sole member is ExamWorks BidCo, Inc., a corporation organized and existing under the laws of Delaware with a principal place of business in the State of Georgia.

2. Defendant Quality Medical Evaluators, Ltd. is a corporation organized and existing under the laws of the State of California, having a principal place of business in California.

3. Defendant First Medical Experts, Inc. is a corporation organized and existing under the laws of the State of California, having a principal place of business in California.

4. Defendant National Disability Evaluations, Inc. is a corporation organized and existing under the laws of the State of California, having a principal place of business in California.

5. Richard E. Albert is a resident and citizen of the state of California.

6. The Albert Trust is a citizen of the state of California by way of Albert's citizenship.

## JURISDICTION AND VENUE

7. The Court has personal jurisdiction over Defendants. Under the April 1, 2025 Asset Purchase Agreement between Plaintiff and Defendants (the "APA") (attached hereto as **Exhibit A)**, Defendants consented to the "exclusive jurisdiction of the federal courts sitting in the State of Delaware for any action, dispute, suit or proceeding arising out of or relating to [the APA]." Ex. A § 12.5. Plaintiff's claims arise out of or relate to the APA.

8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b). Defendants expressly consented and waived any objection to venue in the federal courts sitting in the State of Delaware over claims arising out of or relating to the APA. Ex. A § 12.5.

**FACTUAL ALLEGATIONS**

A. **ExamWorks**

10. ExamWorks is a leading provider of independent medical examinations, peer reviews, bill reviews, Medicare compliance, record retrieval, document management, and related services to property and casualty insurance carriers, law firms, third-party claims administrators, and government agencies.

B. **Defendants**

11. The Sellers are three companies that provided similar types of services as ExamWorks does, largely through contractual relationships with physicians.

12. The Albert Trust is a trust that holds 100% of the issued and outstanding capital stock of each of the Sellers.

13. Albert is a trustee and the settlor of The Albert Trust. As of April 1, 2025, Albert was Chief Executive Officer of each Seller.

C. **The Asset Purchase Agreement**

14. On April 1, 2025, ExamWorks acquired substantially all of the assets of the Sellers pursuant to the APA (the "Transaction"). The assets acquired by ExamWorks consisted, in large part, of the Sellers' contractual relationships with physicians.

15. ExamWorks principally paid ████████ for the acquired assets of the Sellers. Ex. A § 3.1. The ████████ purchase price represented a more than ████████ multiple of the Sellers' consolidated earnings before interest, taxes, depreciation, and amortization ("EBITDA") for the twelve-month period ending August 2024.

16. In addition to the ████████ purchase price, the APA also provides for the calculation of a potential earnout payment from ExamWorks to the Sellers (the "Earnout"), to be

3

calculated based on ████████████████████

████████████████████████████████████████

Ex. A § 3.5.

    17.    The APA defines "Fraud" as ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ Ex. A § 1.1 at 5.

    18.    In Article IV of the APA, the Defendants "jointly and severally[] represent[ed] and warrant[ed] to" ExamWorks certain facts. Ex. A at 20.

    19.    For instance, in Section 4.17(b) of the APA, the Defendants represented and warranted to ExamWorks that ████████████████████

████████████████████████████████████████

████████████████ Ex. A § 4.17(b); *see id.* § 1.1 at 8.

    20.    Schedule 4.17(b) lists Dr. Kirk Chang, a cardiologist, and Dr. Andrew Schreiber, a neurologist, as medical providers actively providing services to each of the Sellers. Between January 1, 2022, and June 30, 2024, Schreiber was paid ████████ by the three Sellers and

4

Chang was paid ▮▮▮▮▮▮. Schreiber and Chang accounted for over ▮▮ of Sellers' revenue for the twelve-month period ending August 2024.

21. In Section 4.17(e) of the APA, the Defendants represented and warranted to ExamWorks that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22. Schedule 4.17(e) does not identify Chang or Schreiber.

23. Defendants never informed ExamWorks of any event that could materially and adversely affect a Seller's relations with Chang or Schreiber.

24. Defendants never informed ExamWorks of any cancellation, termination, or threat to cancel or terminate any agreement with Sellers made by Chang or Schreiber prior to April 1, 2025.

25. Defendants never informed ExamWorks that either Albert or The Albert Trust (defined in the APA as the Shareholders) had any knowledge that Chang or Schreiber planned to terminate or materially alter their business relations with a Seller.

26. Section 7.3 of the APA required the Sellers to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████

27. Section 8.1 of the APA states that ██████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████

28. Under Section 11.1 of the APA, Defendants are required to indemnify ExamWorks from ████████████████████████████████████████
███████████████████████████████████████████████████
of the APA.

### D. Defendants' Intentional Non-Disclosure of Physician Terminations

29. On August 1, 2025, Schreiber and Chang each sent a letter to ExamWorks notifying ExamWorks that each intended to terminate their contractual relationship with the company effective October 1, 2025. A true and correct copy of Schreiber's letter is attached as **Exhibit B** and a true and correct copy of Chang's letter is attached as **Exhibit C**.

30. Each physician's letter noted that their termination would be effective the day after the Earnout Period closed on September 30, 2025.

31.     In Schreiber's letter to ExamWorks, he stated that his decision to terminate his contractual relationship had "previously been communicated to Mr. Rick Albert by my office manager, Gretchen, during a phone call on February 28, 2025, and again in a follow-up email in March." Ex. B.

32.     Schreiber continued by stating that "[f]ollowing that notice, Mr. Albert responded by stating that all Quality Medical Evaluators work would be removed from Gretchen effective immediately unless I agreed to remain for an additional six months. Based on that timeline, the six month period has concluded." Ex. B.

33.     In other words, Schreiber notified Albert, and by extension, the Defendants, multiple times prior to the Transaction closing that he intended to terminate his relationship with Sellers.

34.     Albert and the Defendants knew that Schreiber planned to terminate or materially alter his business relations with Sellers.

35.     Schreiber and his office manager's communications with Albert were events that could materially and adversely affect a Seller's relations with Schreiber.

36.     Because Defendants failed to disclose Schreiber and his office manager's communications to ExamWorks, Defendants' representations and warranties in Section 4.17(e) of the APA were false.

37.     Upon information and belief, Albert likewise knew of Chang's intent to terminate his contractual relationship with ExamWorks and again requested that Chang continue his contract until the end of the Earnout period. This is evidenced by Chang sending his termination letter on the same date as Schreiber and noting that he planned to discontinue his contractual arrangement with ExamWorks on the same date as Schreiber. *See* Ex. C.

38. Despite ExamWorks' attempts to negotiate, Schreiber's and Chang's contractual relationships with ExamWorks did terminate effective October 1, 2025. Only after months of additional negotiations was ExamWorks able to come to a new agreement with Schreiber, at a higher rate than Schreiber's contract provided for before he terminated.

39. The loss of Schreiber and Chang was material to ExamWorks' business, as each contributed a material portion of Sellers' revenue.

40. Upon information and belief, Albert deliberately concealed Schreiber's and Chang's intention to terminate their contracts and requested that Schreiber and Chang continue their contractual relationships with ExamWorks until no later than October 1, 2025, so that he could achieve a two-fold benefit in his role as shareholder of the Sellers:

   a. *First*, he would benefit from an inflated purchase price which included the value of Schreiber and Chang continuing to provide services to ExamWorks—ExamWorks would not have paid the same purchase price if it knew that a material portion of Sellers' revenue was temporary in nature.

   b. *Second*, he would benefit from an inflated Earnout payment because the Earnout payment would include the value of Schreiber's and Chang's services (even though he knew of Schreiber's and Chang's intentions to terminate their contractual relationships with ExamWorks the day after the Earnout calculation concluded).

**E. ExamWorks' Reliance on Defendants' Intentional Misrepresentations**

41. ExamWorks negotiated the Transaction with Defendants based on the value of the Sellers' assets going forward after the sale. This included the value of the Sellers' contracts with Schreiber and Chang.

8

42. ExamWorks negotiated with Defendants to include representations and warranties in the contract, including Section 4.17(e) regarding Defendants' knowledge of any medical provider's intention to terminate their contracts.

43. Defendants knew that ExamWorks relied on their representations in Article IV—the APA expressly stated that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. A § 6.9.

44. ExamWorks reasonably expected that Defendants would provide accurate information in response to Section 4.17(e) of the APA.

45. In negotiating the Transaction, purchase price, and Earnout methodology, ExamWorks reasonably relied on Defendants' representations in the APA and Disclosure Schedules which (falsely) stated that no event had occurred that could materially and adversely affect a Seller's relations with Chang or Schreiber; that neither Chang nor Schreiber had cancelled, terminated, or threatened to cancel or terminate any agreement with Sellers; and that Albert and the Albert Trust were not aware of Schreiber's and Chang's intentions to terminate their contracts.

46. ExamWorks was not aware of Schreiber's and Chang's intentions to terminate their contracts with ExamWorks in negotiating the Transaction and purchase price.

47. ExamWorks would not have consummated the transaction at the ███████ purchase price or with the Earnout methodology (if at all) if it had known that Schreiber and Chang planned or threatened to terminate their contracts with ExamWorks prior to the Transaction closing.

### F. Damages

48.     ExamWorks has suffered millions of dollars in damages in the form of payment of an artificially inflated purchase price which incorporated the value of Schreiber's and Chang's contracts, which together accounted for over ▮ of Sellers' revenue in the twelve-month period ending August 2024.

49.     ExamWorks also paid bonuses of ▮ at the Transaction signing to Schreiber and his office manager, Gretchen, which it would not have paid if it had known of Schreiber's intent to terminate his contract.

50.     ExamWorks will be damaged further if it is required to pay an Earnout payment that improperly takes into account the forward-looking value of Schreiber's and Chang's contracts (which terminated the day after the Earnout period expired).

51.     ExamWorks continues to suffer damages in the form of lost revenue related to the termination of Schreiber's and Chang's contractual relationships effective October 1, 2025. While ExamWorks later was able to come to a new agreement with Schreiber in December 2025, ExamWorks continues to suffer damages because the new Schreiber agreement is at a higher payment rate than what was contemplated under his original agreement with Sellers.

52.     Per the terms of the APA, there is no contractual limit of liability for ▮ ▮ Ex. A § 11.5(b), and indemnification is not ExamWorks' exclusive remedy for ▮ *Id.* § 11.8.

### G. Indemnification Letter

53.     On September 30, 2025, ExamWorks served Albert with a Notice of Claim demanding indemnification for damages it had incurred based on the ▮

10

██████████████████████████████████████████████████████████████ as required by APA Sections 11.1 and 11.3.

54. On October 30, 2025, Albert refused to indemnify ExamWorks for its losses.

## COUNT I
### (Breach of Contract)

55. ExamWorks realleges and incorporates by reference each and every allegation above as if fully set forth herein.

56. ExamWorks and Defendants entered into the APA dated April 1, 2025.

57. In Section 4.17(e) of the APA, Defendants represented and warranted that ████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████.

58. Defendants further represented and warranted in Section 4.17(e) that Schreiber and Chang had not ██████████████████████████████████████████████ any contractual relationship with the Sellers or to ██████████████████████████████████ ██████.

59. Defendants further represented and warranted in Section 4.17(e) that ████ ████████████████████████████████████████████████████████████████████████ ██████████████████.

60. The Defendants knew that Schreiber had made threats to cancel his contractual agreement prior to the Transaction closing date and had requested that Schreiber maintain his contractual relationship until October 1, 2025. The Defendants further knew that Schreiber intended to terminate his contractual relationship with the Sellers effective October 1, 2025.

61. On information and belief, the Defendants knew that Chang had made threats to cancel his contractual agreement prior to the Transaction closing date and had requested that Chang

11

maintain his contractual relationship until October 1, 2025. The Defendants further knew that Chang intended to terminate his contractual relationship with the Sellers effective October 1, 2025.

62. In violation of Section 4.17(e) of the APA, the Defendants failed to disclose their knowledge of Schreiber's and Chang's threats and intentions to terminate their contractual relationships with the Sellers.

63. Defendants additionally violated Section 7.3 of the APA by failing to later inform ExamWorks of the inaccuracy of their representations and warranties.

64. Finally, Defendants violated Section 11.1 by failing to indemnify ExamWorks for losses arising from the inaccuracy of Defendants' representations and warranties. Pursuant to Section 11.3, because Albert disputed the indemnification obligation, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A § 11.3(d).

65. As a result of Defendants' conduct, ExamWorks has been damaged because it paid more for the assets of the Sellers and agreed to a more lucrative Earnout methodology than it otherwise would have because it had no reason to believe the value of Schreiber's and Chang's ongoing contractual relationships was only temporary.

## COUNT II
### (Common Law Fraud)

66. ExamWorks realleges and incorporates by reference each and every allegation above as if fully set forth herein.

67. Defendants actively concealed their knowledge of Schreiber's and Chang's intentions and/or threats to end their contractual relationships with the Sellers prior to the Transaction closing on April 1, 2025.

68. Defendants represented and warranted in the APA that Albert and the Albert Trust had no knowledge of any event that could materially affect Schreiber's or Chang's relations with Sellers nor any knowledge of Schreiber's or Chang's intentions to end their contractual relationships with the Sellers; and that Schreiber and Chang had not made any threat to cancel or otherwise terminate their relationships with the Sellers.

69. These were false representations. As is clear from Schreiber's termination letter, Schreiber had threatened to Albert that he intended to end his contractual relationship with Defendants prior to the Transaction closing, and only agreed to remain contracted for six months after the Transaction closed after Albert threatened to terminate his and his office manager's contracts immediately.

70. On information and belief, based on the circumstances surrounding Chang's departure from ExamWorks, Albert had a similar conversation with Chang which he likewise failed to disclose to ExamWorks.

71. Defendants' intentional misrepresentations had a material effect on the purchase price because Schreiber's and Chang's contracts accounted for a substantial amount of the Seller's revenues.

72. Defendants did not disclose Schreiber's and Chang's imminent terminations because they intended that ExamWorks rely on the misrepresentation and pay Defendants an artificially inflated purchase price and Earnout payment in connection with the Transaction.

73. ExamWorks had no way to verify what Defendants did and did not know about Schreiber's and Chang's intentions to terminate their contractual relationships and reasonably relied on Defendants' misrepresentations in the APA in deciding to go forward with the

Transaction at the ▮▮▮▮▮ purchase price. Defendants agreed that that reliance was reasonable in Section 6.9 of the APA.

74. ExamWorks has suffered damages in the form of paying an artificially inflated purchase price for the Sellers which included the value of Schreiber's and Chang's contracts. ExamWorks will suffer additional harm if it is required to pay an Earnout payment which includes the value of Schreiber's and Chang's contracts (which terminated the day after the Earnout period expired).

75. ExamWorks is also suffering ongoing damages in the form of lost revenue related to the termination of Schreiber's and Chang's contractual relationships effective October 1, 2025.

## COUNT III
### (Declaratory Judgment, 28 U.S.C. §§ 2201, 2202)

76. ExamWorks realleges and incorporates by reference each and every allegation above as if fully set forth herein.

77. An actual and justiciable controversy exists between ExamWorks and Defendants regarding the calculation of the Earnout because the Earnout calculation as defined in the APA relies on a multiple of EBITDA which would include the value of Schreiber's and Chang's contracts—even though Defendants fraudulently withheld from ExamWorks information about Schreiber's and Chang's intentions to terminate their contractual relationships (effective the day after the Earnout period expired).

78. A declaratory judgment is necessary and appropriate to resolve this controversy and to clarify the parties' rights and obligations with respect to the Earnout.

79. ExamWorks respectfully requests that this Court determine and declare that Defendants failed to perform under the APA.

80.     ExamWorks further requests that this Court determine and declare that as a result of Defendants' failure to perform under the APA, Defendants are not entitled to an Earnout under the APA.

81.     ExamWorks further requests that this Court determine and declare that, to the extent Defendants are entitled to any Earnout under the APA, the calculation of Earnout EBITDA should exclude the value of Schreiber's and Chang's contracts because including such contracts would result in an artificially inflated Earnout payment procured by Defendants' fraudulent action.

82.     Without such relief, Defendants will improperly benefit from their willful and intentional misconduct in failing to inform ExamWorks of their knowledge of Schreiber's and Chang's intentions to terminate their contracts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief from Defendants, jointly and severally:

A.      Compensatory, punitive, and exemplary damages;

B.      A declaratory judgment that (i) Defendants failed to perform under the APA; (ii) Defendants are not entitled to an Earnout under the APA; and (iii) any Earnout under the APA should be calculated to exclude the value of Schreiber's and Chang's contracts;

C.      Costs, attorneys' fees, and interest; and

D.      Such other and further relief that this Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL:<br>(*pro hac vice* forthcoming) | By: */s/ John A. Sensing*<br>John A. Sensing (#5232) |
| Steven N. Feldman<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>+1.212.906.1200 – Telephone<br>steve.feldman@lw.com | P. Andrew Smith (#7117)<br>1313 North Market Street<br>Hercules Plaza, 6th Floor<br>Wilmington, DE 19801<br>(302) 984-6000 – Telephone<br>(302) 658-1192 – Facsimile<br>jsensing@potteranderson.com<br>asmith@potteranderson.com |
| Zachary R. Edelman[1]<br>LATHAM & WATKINS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>+1.617.948.6000 – Telephone<br>zach.edelman@lw.com |  *Attorneys for Plaintiff* |

Dated:  December 18, 2025

**Public Version Dated: December 26, 2025**

---

[1] Admitted to practice in New York only.

16